# IN THE COURT OF APPEALS OF THE STATE OF IDAHO

## Docket No. 53794

| | |
|---|---|
| In the Matter of: Jane Doe I and Jane Doe II, Children Under Eighteen (18) Years of Age. | ) ) ) |
| STATE OF IDAHO, DEPARTMENT OF HEALTH & WELFARE, | ) ) |
| Petitioner-Respondent, | ) ) |
| v. | ) ) |
| JANE DOE (2026-09), | ) ) |
| Respondent-Appellant. | ) ) ) |

Filed: August 12, 2026

Melanie Gagnepain, Clerk

Appeal from the Magistrate Division of the District Court of the First Judicial District, State of Idaho, Kootenai County. Hon. Robert J. Caldwell, Magistrate.

Judgment terminating parental rights, <u>affirmed</u>.

Belley Law Office, PLLC; Deborah Belley, Coeur d'Alene, for appellant.

Hon. Raúl R. Labrador, Attorney General; Denise L. Rosen, Deputy Attorney General, Coeur d'Alene, for respondent.

---

LORELLO, Judge

Jane Doe (2026-09) appeals from the judgment terminating her parental rights. We affirm.

## I.

## FACTUAL AND PROCEDURAL BACKGROUND

Doe is the mother of the minor children in this action born in July 2012 and December 2020. The children were taken into custody by law enforcement and placed in foster care following two separate incidents in November and December 2022. In both cases, Doe stipulated to the magistrate court's jurisdiction and legal custody of the children in the Idaho Department of Health and Welfare. The two cases were consolidated in January 2023. The magistrate court approved a

1

case plan for Doe regarding each child, with the primary goal of reunification. The Department provided Doe with resources to help in completing the tasks on her case plan. The Department provided referrals to Doe for counseling, substance abuse treatment, parenting classes, intensive family services, and housing. The Department also offered Doe vouchers for food, clothing, and gas. The Department regularly met with Doe to track her progress on her case plan and determine any barriers that might prevent her from completing it.

Regular hearings were held to assess Doe's progress on her case plan. At the permanency hearing in May 2025, the magistrate court changed the primary goal to termination of parental rights after finding that it was not in the best interests of the children to continue visitation with Doe, citing Doe's continued drug use and mental health struggles. The termination of parental rights trial was held in January 2026; the magistrate court subsequently entered a written memorandum decision and judgment terminating Doe's parental rights to her children. Doe appeals.

## II.

## STANDARD OF REVIEW

On appeal from a decision terminating parental rights, this Court examines whether the decision is supported by substantial and competent evidence, which means such evidence as a reasonable mind might accept as adequate to support a conclusion. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). The appellate court will indulge all reasonable inferences in support of the trial court's judgment when reviewing an order that parental rights be terminated. *Id.* The Idaho Supreme Court has also said that the substantial evidence test requires a greater quantum of evidence in cases where the trial court's finding must be supported by clear and convincing evidence than in cases where a mere preponderance is required. *State v. Doe*, 143 Idaho 343, 346, 144 P.3d 597, 600 (2006). Clear and convincing evidence is generally understood to be evidence indicating that the thing to be proved is highly probable or reasonably certain. *Roe v. Doe*, 143 Idaho 188, 191, 141 P.3d 1057, 1060 (2006). Further, the trial court's decision must be supported by objectively supportable grounds. *Doe*, 143 Idaho at 346, 144 P.3d at 600.

## III.

## ANALYSIS

Doe asserts the magistrate court's finding of statutory neglect is not supported by substantial and competent evidence. Doe also asserts the magistrate court erred in finding that termination of her parental rights is in the children's best interests. The Department responds that substantial and competent evidence supports the magistrate court's statutory neglect and best interests findings. We hold that substantial and competent evidence supports the magistrate court's judgment terminating Doe's parental rights.

**A.      Statutory Basis for Termination**

A parent has a fundamental liberty interest in maintaining a relationship with his or her child. *Troxel v. Granville*, 530 U.S. 57, 65 (2000); *Doe v. State*, 137 Idaho 758, 760, 53 P.3d 341, 343 (2002). This interest is protected by the Fourteenth Amendment to the United States Constitution. *State v. Doe*, 144 Idaho 839, 842, 172 P.3d 1114, 1117 (2007). Implicit in the Termination of Parent and Child Relationship Act is the philosophy that, wherever possible, family life should be strengthened and preserved. I.C. § 16-2001(2). Therefore, the requisites of due process must be met when terminating the parent-child relationship. *State v. Doe*, 143 Idaho 383, 386, 146 P.3d 649, 652 (2006). Due process requires that the grounds for terminating a parent-child relationship be proved by clear and convincing evidence. *Id*. Because a fundamental liberty interest is at stake, the United States Supreme Court has determined that a court may terminate a parent-child relationship only if that decision is supported by clear and convincing evidence. *Santosky v. Kramer*, 455 U.S. 745, 769 (1982); *see also* I.C. § 16-2009; *Doe v. Dep't of Health & Welfare*, 146 Idaho 759, 761-62, 203 P.3d 689, 691-92 (2009); *Doe*, 143 Idaho at 386, 146 P.3d at 652.

The magistrate court terminated Doe's parental rights on the basis of neglect. Idaho Code Section 16-2002(3)(a) defines "neglect" as any conduct included in I.C. § 16-1602(31). Section 16-1602(31)(a) provides, in pertinent part, that a child is neglected when the child is without proper parental care and control, or subsistence, medical or other care or control necessary for his or her well-being because of the conduct or omission of his or her parents, guardian, or other custodian or their neglect or refusal to provide them. Neglect also exists where the parent has failed to comply with the court's orders or the case plan in a Child Protective Act (CPA) case and the Department has

3

had temporary or legal custody of the child for fifteen[1] of the most recent twenty-two months and reunification has not been accomplished by the last day of the fifteenth month in which the child has been in the temporary or legal custody of the Department. I.C. § 16-2002(3)(b).

On appeal, Doe argues that the magistrate court's finding of neglect was not supported by substantial and competent evidence. This argument is based on several claims, including that the magistrate court erred in the following respects: (1) admitting, considering, relying on, or permitting judicial notice of materials or hearsay from the underlying CPA case that were not properly admitted as evidence at the termination trial; (2) permitting "undisclosed expert-like testimony and hearsay-based testimony" from a Department caseworker without proper expert witness disclosure, foundation, or limitation, and by relying on that testimony in terminating Doe's parental rights; (3) allowing counsel for the guardian ad litem to conduct a lengthy, duplicative, and adversarial cross-examination of Doe that exceeded the proper child-advocacy role and functioned as a second prosecution of the Department's petition; and (4) admitting an exhibit over Doe's hearsay objection after the exhibit was used to refresh a witness's recollection. Doe's position is that, without these errors, there was insufficient evidence to support the magistrate court's decision. We disagree.

**1.      Judicial notice**

We first address Doe's judicial notice argument. Doe's specific argument appears to be that the magistrate court abused its discretion in admitting "Exhibits 2, 5, 9, and 12" because "the court did not properly distinguish between taking notice of the existence of prior orders and treating the findings or embedded factual assertions within those orders as substantive proof" at the termination trial. Exhibits 2 and 9 are shelter care orders from the CPA case and Exhibits 5 and 12 are adjudicatory decrees from the CPA case. These exhibits were admitted at the termination trial. It is apparent from the transcript and Doe's appellate brief that she often conflates judicial notice with admissibility based on an exception to the rule against hearsay. At trial, Doe argued that the magistrate court could not take judicial notice of Department reports because they

---

[1]      At the time the Department filed the petition to terminate Doe's parental rights, the statutory timeframe under I.C. § 16-2002(3)(b) was fifteen out of the most recent twenty-two months. Subsequently, the statute was amended to twelve of the most recent twenty-two months.

4

did not qualify as business records pursuant to I.R.E. 803(6). Whether a document qualifies for the I.R.E. 803(6) exception is unrelated to whether it may be judicially noticed pursuant to I.R.E. 201. Exhibits 2, 5, 9, and 12 are not Department reports--they are court orders or decrees that are the proper subject of judicial notice. *See* I.R.E. 201(c)(2) (providing court "must," upon request, "take judicial notice of records, exhibits or transcripts from the court file in the same or a separate case" when supplied with the specific documents to be noticed). To the extent Doe argues that the magistrate court could not take judicial notice of the orders or decrees because they were entered based on reports or documents that did not satisfy I.R.E. 803(6), she has not cited any authority to support this proposition. Doe contends our decision in *Idaho Dep't of Health & Welfare v. Doe (2011-17)*, 152 Idaho 953, 277 P.3d 400 (Ct. App. 2012) is "directly instructive" because we cautioned that a "blanket" judicial notice for "all records and files [is] insufficient."[2] This proposition is only instructive insofar as it shows the magistrate court did not err because it did not take "blanket" judicial notice of anything; it took judicial notice of specific court orders and decrees. Doe has failed to show the magistrate court erred in admitting the CPA court orders and decrees pursuant to I.R.E. 201.

In addition to challenging the admissibility of the CPA court orders and decrees, Doe argues that "error arises if the findings or judgment rely on materials that were not admitted," such as attachments to the orders or decrees, which the magistrate court did not admit. Doe asks this Court to "closely compare the written findings with the evidence actually admitted at trial" to make sure this did not occur. We decline Doe's invitation to do so because it is not this Court's duty to search the record for error, it is Doe's burden to demonstrate it. *See Idaho Dep't of Health & Welfare v. Doe*, 150 Idaho 103, 113, 244 P.3d 247, 257 (Ct. App. 2010). Doe has made little to no effort to demonstrate error resulting from judicial notice of the CPA court orders and decrees. Doe argues, in conclusory fashion, that although "[s]ome procedural history was relevant," the magistrate court's "use of the CPA record went beyond the neutral procedural facts of filing dates,

---

[2] Doe does not provide a pin cite for the portion of the opinion upon which she relies. Presumably she is relying on footnote 1, which reads, in part: "Although the [magistrate] court gave a blanket judicial notice to all records and files pertinent to this case, the request by counsel was insufficient to meet the requirements of Idaho Rule of Evidence 201 because the general request failed to identify specific documents." *Doe (2011-17)*, 152 Idaho at 956 n.1, 277 P.3d at 403 n.1.

custody dates, and case-plan existence." Doe makes similar conclusory statements in arguing that the alleged error affected her substantial rights. For example, Doe contends the magistrate court's "decision used the CPA history as part of the termination narrative." Doe cites nothing from the magistrate court's decision to support these assertions. Doe's failure to do so is contrary to I.A.R. 35(a)(6), which requires citations to the record to support her arguments and is fatal to her claim that the magistrate court erred with respect to its consideration of the CPA orders and decrees admitted as exhibits.

### 2. Case manager testimony

Doe asserts the magistrate court erred by allowing the Department to present "undisclosed expert-like testimony and hearsay-based testimony" from the case manager. Doe's arguments on this issue are conclusory. Other than describing the general nature of the testimony and that her objections to the testimony were overruled, Doe makes no effort to identify specific testimony or explain why it was improper. Doe's only citations to the law are to a case that reportedly stands for the proposition that "CPA proceedings may expose the court to reports and allegations that would not necessarily be admissible at a termination trial" and a "see" citation to I.R.E. 701[3] to support her assertions that the case manager "could not serve as a conduit for otherwise inadmissible hearsay without proper disclosure and foundation." Doe cites to a large portion of the transcript without specifically addressing any part of it in her briefs. Summaries of testimony and recitation of generic legal principles fall far short of the necessary argument and authority to support a claim of error on appeal. *See Idaho Dep't of Health & Welfare v. Doe (2018-24)*, 164 Idaho 143, 147, 426 P.3d 1243, 1247 (2018) (explaining that appellate courts generally do not address issues not supported by cogent argument and citation to legal authority, even in a case terminating parental rights). We, therefore, need not consider the merits of Doe's challenges to the case manager's testimony.

---

[3]    Idaho Rule of Evidence 701 governs the testimony of lay witnesses, not experts. Although I.R.E. 701 references I.R.E. 702, which does govern expert testimony, neither I.R.E. 701 nor 702 address disclosure requirements for experts. Further, Doe cites no authority for the proposition that the Department was required to disclose the case manager as an expert. Even assuming the case manager qualifies as an expert, I.J.R. 41A(b)(2) only relates to disclosure of expert witnesses at adjudicatory hearings, not termination trials.

6

### 3.    Guardian ad litem

Doe asserts the guardian ad litem's role at her termination trial exceeded its proper scope because the magistrate court allowed the guardian ad litem's attorney to act as a "second prosecutor" during cross-examination that "went well beyond independent child-best-interest advocacy." This argument is not preserved. Although Doe made some objections during the guardian ad litem's cross-examination of Doe, none of the objections were based on the assertion that the questions were improper for the reasons she claims on appeal. As such, we need not consider the merits of this argument. *See Sanchez v. Arave*, 120 Idaho 321, 322, 815 P.2d 1061, 1062 (1991) (explaining that issues not raised below generally may not be considered for the first time on appeal).[4]

Idaho Code Section 16-1632(a) vests the guardian ad litem with all rights of party to a lawsuit. Counsel representing a guardian ad litem has broad authority as a representative of the child and "shall participate fully in the proceedings and to the degree necessary to represent the child." I.C. § 16-1633(3). The language of I.C. § 16-1633(3) (formerly I.C. § 16-1631(c)) concerning participation "to the degree necessary to adequately represent the child" is intended to provide direction for the guardian ad litem, not to authorize limitation by the court presiding over the matter. *Wood v. Idaho Dep't Health & Welfare*, 127 Idaho 513, 517, 903 P.2d 102, 106 (Ct. App. 1995). Doe's claim that the guardian ad litem's attorney conducted an improper cross-examination is without merit.

### 4.    Refreshing recollection

Doe asserts the magistrate court erred in admitting a document (Exhibit 29) that she utilized to refresh the case manager's recollection. According to Doe, because she only used Exhibit 29 to refresh the case manager's recollection with respect to a date, the document should not have been admitted pursuant to I.R.E. 612(b). Doe has failed to show error in the admission of Exhibit 29.

---

[4]    We also note that Doe's argument in support of her challenge to the guardian's cross-examination is replete with conclusory statements unsupported by legal authority, which is an independent reason to reject consideration of the merits of this claim. *Doe (2018-24)*, 164 Idaho at 147, 426 P.3d at 1247 (explaining appellate courts generally do not address issues not supported by cogent argument and citation to legal authority, even in a case terminating parental rights).

The magistrate court's decision to admit evidence under I.R.E. 612(b) is reviewed for an abuse of discretion. *Perry v. Magic Valley Reg'l Med. Ctr.*, 134 Idaho 46, 56, 995 P.2d 816, 826 (2000). When a trial court's discretionary decision is reviewed on appeal, the appellate court conducts a multi-tiered inquiry to determine whether the trial court: (1) correctly perceived the issue as one of discretion; (2) acted within the boundaries of such discretion; (3) acted consistently with any legal standards applicable to the specific choices before it; and (4) reached its decision by an exercise of reason. *Lunneborg v. My Fun Life*, 163 Idaho 856, 863, 421 P.3d 187, 194 (2018).

Exhibit 29 is a progress report for a review hearing and permanency plan. Exhibit 29 was ultimately admitted after Doe asked the case manager if reviewing the document would refresh her recollection as to when she recommended termination of Doe's parental rights. Doe objected to the admission of Exhibit 29 for any purpose other than the date. The magistrate court overruled the objection, concluding that admission was proper pursuant to I.R.E. 612. Idaho Rule of Evidence 612(b) provides that an adverse party is entitled to introduce in evidence "any portion" of a writing used to refresh a witness's recollection. Because Doe asked the case manager to review Exhibit 29 relative to the recommendation contained therein, the magistrate court declined to "parse" through the document to limit admission of any of its contents. This determination was not an abuse of the magistrate court's discretion, particularly since Doe failed to identify any part of Exhibit 29 that included "unrelated matter" as *she* was required to do under I.R.E. 612(b).[5]

Even if portions of Exhibit 29 should have been excluded, Doe has failed to show she was prejudiced by admission of the exhibit in its entirety. Doe's arguments to the contrary are speculative and conclusory. Rather than identify how, if at all, the magistrate court improperly relied on the substance of Exhibit 29, Doe asserts its admission created a "danger" that it was used as "substantive proof" because the substance of the report was relevant to termination. These arguments are insufficient to demonstrate reversible error.

---

[5]  To the extent Doe suggests the magistrate court had an obligation to review Exhibit 29 and limit admission of some of its contents, she is incorrect. As noted in the rule, it is the producing party's obligation to identify unrelated matter in the writing used to refresh a witness's recollection. I.R.E. 612(b). Nothing in Exhibit 29 was unrelated to the termination trial.

8

### 5. Neglect

Doe contends there is insufficient evidence to support the magistrate court's finding of neglect because she substantially completed her case plan and that the magistrate court erroneously applied the "too little too late" principle in reaching its conclusion. We disagree.

The magistrate court found that Doe did not comply with her case plan tasks related to employment and housing. With respect to employment, the magistrate court found that Doe did not provide proof of income or consistent employment by submitting monthly paychecks because her employment was part-time and often involved "under the table" jobs. The magistrate court further found Doe's work history was historically temporary, sporadic, and only enough to meet her needs. Doe's claim that she had significant income was unverified. As for establishing safe and stable housing free of substance use and active substance users, the magistrate court found Doe "was regularly involved with a known methamphetamine drug user where they would regularly frequent each other's residence." The magistrate court also found Doe admitted using methamphetamine during the CPA case, tested positive for methamphetamine during the case, and "missed so many drug tests during this case that she was archived two times for 'no shows.'" The magistrate court explained that this case started in 2022, and it was not "until the spring of 2025 that [Doe] began to make progress on her treatment." As a result, the magistrate court found that Doe's use of methamphetamine interfered with her ability to safely parent her children. As for the progress Doe did make, the magistrate court found Doe's "long track record of neglect of her children" was not "outweighed by her more recent efforts." The magistrate court explained that, even though Doe "engaged with multiple providers," she "used methamphetamine, failed to regularly test for drugs, failed to find stable employment, and avoided completing treatment until the last minute." Contrary to Doe's assertion, the magistrate court properly concluded Doe's last-minute efforts were insufficient to overcome the case plan tasks Doe did not complete. *See Idaho Dep't of Health & Welfare v. Doe (2016-32)*, 161 Idaho 754, 761, 390 P.3d 1281, 1288 (2017) (concluding there was no error in the magistrate court's conclusion that "recent and modest improvements were insufficient to overcome [mother's] history of demonstrated unfitness"); *see also Idaho Dep't of Health & Welfare v. Doe (2014-17)*, 157 Idaho 694, 702, 339 P.3d 755, 763 (2014) (concluding that, because mother's progress was "recent," it did not "outweigh the long track record of neglect of her children").

Doe's disagreement with the weight the magistrate court assigned to the tasks Doe failed to complete and her disagreement with the magistrate court's conclusion that Doe's efforts were "too

9

little too late" does not mean the evidence was insufficient. Ultimately, Doe essentially asks this Court to reweigh the evidence presented at the termination trial. This is not our role. Our review is limited to whether substantial and competent evidence supports the magistrate court's decision. *Doe v. Doe*, 148 Idaho 243, 245-46, 220 P.3d 1062, 1064-65 (2009). We hold that substantial and competent evidence supports the magistrate court's finding of neglect.

**B.      Best Interests**

Once a statutory ground for termination has been established, the trial court must next determine whether it is in the best interests of the child to terminate the parent-child relationship. *Tanner v. State, Dep't of Health & Welfare*, 120 Idaho 606, 611, 818 P.2d 310, 315 (1991). When determining whether termination is in the child's best interests, the trial court may consider the parent's history with substance abuse, the stability and permanency of the home, the unemployment of the parent, the financial contribution of the parent to the child's care after the child is placed in protective custody, the improvement of the child while in foster care, the parent's efforts to improve his or her situation, and the parent's continuing problems with the law. *Doe (2015-03) v. Doe*, 159 Idaho 192, 198, 358 P.3d 77, 83 (2015); *Idaho Dep't of Health & Welfare v. Doe*, 156 Idaho 103, 111, 320 P.3d 1262, 1270 (2014). A finding that it is in the best interests of the child to terminate parental rights must still be made upon objective grounds. *Idaho Dep't of Health & Welfare v. Doe*, 152 Idaho 953, 956-57, 277 P.3d 400, 403-04 (Ct. App. 2012).

Doe argues that there was insufficient evidence that maintaining her parental rights would be contrary to the children's best interests. Doe asserts she maintained visitation, completed parenting education, and participated in appointments for the children. Doe also asserts she has a continuing bond with the children.

The magistrate court found that one child (Jane Doe I) is prone to anxiety, suffers from ADHD, and requires additional assistance at school. Jane Doe I's school attendance was inconsistent while living with Doe but has been consistent while living with her foster parents. Jane Doe I returned to Doe's home for an extended home visit and "began to deteriorate." Jane Doe I had to be removed from Doe's care following an incident involving Doe and another child in the home. Jane Doe I reported wanting to die, appeared anxious, disheveled, and emotional. The magistrate court found that another child (Jane Doe II) spent the majority of her life in foster

10

care and that, since birth, Doe never fully parented Jane Doe II. Jane Doe II was doing well and had a "significant attachment to her foster parents."

The magistrate court further found that Doe is unable to provide stability for her children due to her continued drug use, failure to maintain legal employment, and her failure to consistently and timely engage in mental health and substance abuse treatment. The magistrate court concluded that these unresolved issues created a situation in which the children "cannot tolerate the chaos that [Doe] seems to enjoy." Consequently, the magistrate court found that it is in the best interests of the children to terminate Doe's parental rights. This finding is supported by substantial and competent evidence. Doe has failed to show otherwise.[6]

## IV.
## CONCLUSION

Doe has failed to show error in the magistrate court's findings that her parental rights should be terminated based on neglect. Doe has also failed to show error in the magistrate court's findings that termination of her parental rights is in the best interests of her children. Accordingly, the judgment terminating Doe's parental rights is affirmed.

Chief Judge TRIBE and Judge PETTY, **CONCUR**.

---

[6]     Doe also raises a cumulative error argument on appeal. Because Doe has failed to show any error, she would not be entitled to relief based on cumulative error--even assuming the cumulative error doctrine would apply to a termination of parental rights case.